IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GORDON D. MEADOR,

      Plaintiff,              No. CIV S-11-3342 GGH P

    vs.

M. HAMMER, et al.,           ORDER &

      Defendants.       FINDINGS AND RECOMMENDATIONS

_____/

Motion for Temporary Restraining Order/Preliminary Injunctive Relief

*Introduction/Background*

        Plaintiff, a state prisoner proceeding pro so, seeks relief pursuant to 42 U.S.C. § 1983.  As previously set forth, in the court's order, filed on December 20, 2011 (docket # 8), in a motion for a preliminary injunction, plaintiff, under penalty of perjury, avowed that first watch staff and officers at California State Prison - Sacramento (CSP-Sac) have a policy or practice of refusing to respond to "man-down" calls for inmates in need of emergency medical care.  See Motion, at docket # 2.  Plaintiff referenced three instances wherein defendants Hammer and Asad refused to respond to any man-down calls in B-yard cell blocks 7 and 8.  Id.  Plaintiff stated that he has had asthma attacks and no inhalers and that he has had two heart attacks and been taken by ambulance to a hospital three times for cardiac problems, has liver problems, is diabetic and is

1

1 handicapped due to damage to his spine.  Id.  Seeking immediate relief to stop this allegedly on-

2 going policy or practice, plaintiff claimed that he has had to go so far as to break a cell window

3 for attention to a life-threatening condition and that an inmate has died due to this alleged

4 practice.

5         The underlying complaint, filed on the same day, December 16, 2011, as the

6 motion for TRO/preliminary injunctive relief, references an incident alleged to have occurred on

7 August 13, 2011, when plaintiff, suffering neck and chest pain, numbness in his left arm and

8 shortness of breath, was told by defendants Hammer and Asad who eventually arrived after

9 fellow inmates had been loudly trying for an hour to get help for plaintiff to "shut the fuck up,"

10 after which they walked away.  Complaint, pp. 3-4.  Plaintiff, in great fear, banged on his cell

11 window with his walking cane, shattering the cell window.  Id., at 4.  When defendant Hammer

12 finally returned and noticed the broken window, he told defendant Shaw who had plaintiff and

13 his cellmate removed, handcuffed and placed in cages.  Id., at 4-5.  Shortly after that an unnamed

14 officer was responsible for getting plaintiff to medical at which point he was evaluated and then

15 transported by ambulance to the hospital where, among other things, it was determined he had an

16 erratic heartbeat and had suffered damage to his heart.  Id., at 5.  He was later transported to

17 another hospital for heart surgery.  Id.  Plaintiff seeks by his complaint both money damages and

18 injunctive relief in the form enjoining defendants from refusing to provide emergency medical

19 help to him.  See Order at docket # 8, citing Complaint.

20         Defendants were ordered to respond to plaintiff's motion for preliminary

21 injunctive relief within fourteen days.  In doing so, the deputy attorney general posits that the

22 response is a special appearance; that the court lacks personal jurisdiction over the defendants as

23 no defendant has been served with process or waived personal service; that there is not a policy

24 \\\\\

25 \\\\\

26 \\\\\

2

1  or practice for the court to enjoin; that the Federal Receiver appointed in the Plata[1] class action

2  has implemented, system-wide, an "Urgent/Emergent protocol" which requires prison staff to

3  take specific actions when an inmate needs emergency care; that plaintiff may not proceed on

4  independent claims for injunctive relief regarding these procedures, and that plaintiff's in forma

5  pauperis application is deficient.  See Response, pp. 1-6.

6        *Legal Standard*

7        Temporary Restraining Order / Preliminary Injunction

8        The standards governing the issuance of temporary restraining orders are

9  "substantially identical" to those governing the issuance of preliminary injunctions.  Stuhlbarg

10  Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n. 7 (9th Cir.2001).

11  Therefore, "[a] plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits,

12  that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

13  equities tips in his favor, and that an injunction is in the public interest."  Am. Trucking Ass'n,

14  Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009) (*quoting* Winter v. Natural Res.

15  Def. Council, Inc., 555 U.S. 7, ___, 129 S. Ct. 365, 374 (2008)).  A preliminary injunction is

16  appropriate when a plaintiff demonstrates . . . "serious questions going to the merits and a

17  hardship balance [] tips sharply toward the plaintiff, ... assuming the other two elements of the

18  Winter test are also met."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th

19  Cir. 2011).  A TRO is "an extraordinary remedy that may only be awarded upon a clear showing

20  that the plaintiff is entitled to such relief."  Winter, 129 S. Ct. at 376.

21        The Ninth Circuit has reiterated that under either formulation of the principles, if

22  the probability of success on the merits is low, preliminary injunctive relief should be denied:

23        Martin explicitly teaches that "[u]nder this last part of the
        alternative test, even if the balance of hardships tips decidedly in

24  _____

25        [1] Plata v. Schwarzenegger (Brown), 603 F.3d 1088, 1090  (9th Cir. 2010) (California
prisoner class action challenging prison medical care deficiencies as violative of the Eighth
26  Amendment and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213).

3

1          favor of the moving party, it must be shown as an irreducible
           minimum that there is a fair chance of success on the merits."
2

3   Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (*quoting*

4   Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984)).

5          In cases brought by prisoners involving conditions of confinement, any

6   preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

7   harm the court finds requires preliminary relief, and be the least intrusive means necessary to

8   correct the harm."  18 U.S.C. § 3626(a)(2).

9                    *Discussion*

10         The Deputy Attorney General has included a declaration by CSP- Sacramento

11  Correctional Captain D. Higginbotham to which is attached, as Exhibit A, a copy of a document

12  entitled "Urgent/Emergent Response," which sets forth the CDCR policy for responding to, inter

13  alia, "all medical emergencies," and which constitutes the first of two protocols addressed to

14  CSP-Sac's policies and practices regarding staff requirements to meet inmates' emergency care

15  needs.  Response, Declaration of Captain D. Higginbotham, ¶¶1-3.  Under "Procedure," a

16  requirement states that "[i]nmate-patients may request medical attention for urgent/emergent

17  health care needs from any CDCR employee.  The employee shall, in all instances, notify health

18  care staff."  Higgenbotham Dec., ¶ 3 & Exh. A.  The "Procedure" section sets forth the steps to

19  be taken, by medical or custody staff, in the event of a medical emergency, prioritizes necessary

20  medical treatment over criminal investigatory or custody requirements, and specifies quarterly

21  medical emergency response training and drills and the accessibility of required emergency

22  equipment and supplies.  Exh. A to Higginbotham Dec.  Under a separate section entitled,

23  "Urgent/Emergent Response," it is specified, inter alia, that "direct contact" is to be provided

24  "either in person or by telephone...for all inmate-patients requesting urgent/emergent medical

25  attention or who are referred by staff."  Id.  Corr. Capt. Higginbotham, a 27-year employee of

26  CDCR, states that there is a second protocol, attached as Exh. B, which is a "Local Operating

                                    4

Procedure" specifically adopted for CSP-Sac, which sets forth, in part, "that the First Responder to the scene, 'shall briefly evaluate the patient and situation, then immediately notify health care staff of a possible medical emergency, and summon the appropriate level of assistance.'" Higginbotham Dec., ¶¶ 1-2, 4.   Exh. B is identified as "Operational Procedure No. 139" and entitled, "Emergency Medical Response System" and details, inter alia, the response, treatment, transportation, patient evaluation, initial treatment and documentation procedures for institutional staff to follow in medial emergencies at CSP-Sac.  Finally, Corr. Capt. Higginbotham, under oath, declares that "[t]here is no ongoing policy or practice of refusing to respond to 'man-down' calls for inmates in need of medical care at CSP-Sac."  Id., ¶ 5.

To the extent that plaintiff's motion is narrowly construed as predicated on a claim that CSP-Sac has a policy of refusal to respond to "man-down" calls, the showing by the Attorney General's office is definitive that there is in effect a comprehensive policy for correctional and medical staff there to respond to inmate medical emergencies.  However, this does not address the precise question of whether, notwithstanding the formal policies, that the first watch staff and officers at CSP-Sac have a practice of refusing to respond to "man-down" calls made by inmates in need of emergency medical care.  The deputy attorney general has not provided any declaration from any of the officers about whom plaintiff makes his allegations. While plaintiff may have grown histrionic or even manipulative because of concerns he has about what are apparently a number of medical conditions, plaintiff has raised "serious questions going to the merits," and, arguably, the balance of hardship tips strongly in his favor, but in light of defendants' response, he has not met his burden to show that he will be subject to irreparable harm absent a preliminary injunction or that such would necessarily serve the public interest. Alliance for Wild Rockies v. Cottrell, 632 F.3d at 1131-1132. In other words, plaintiff's belief that he will be a "man down" in the very near future, or even during the pendency of this litigation, is simply speculative at this point.

\\\\\

5

1     Moreover, the court is loath to interfere with the administration of the prison

2  without a substantial showing by plaintiff.  The basis for granting a TRO at this point is too

3  speculative and could do little more than enjoin defendants (for a maximum of twenty days) to

4  follow a policy which is already in effect.  Therefore, the court will recommend denial of the

5  motion for a TRO but plaintiff may file a motion for preliminary injunctive relief once

6  defendants have been served, should he be able to produce a well-supported affidavit which

7  demonstrates that he is an on-going victim of such a putative practice by defendants.

8     The deputy attorney general states that plaintiff, as an inmate with serious medical

9  needs, is a member of the Plata[2] class action and is thereby foreclosed from seeking medical

10  injunctive relief vis-a-vis procedures put in place by the Federal Receiver appointed in Plata to

11  implement a new emergency response protocol.  It is true that a plaintiff who is a member of a

12  class action for equitable relief from prison conditions may not maintain a separate, individual

13  suit for equitable relief involving the same subject matter of the class action.  See Crawford v.

14  Bell, 599 F.2d 890, 892-93 (9th Cir.1979); see also McNeil v. Guthrie, 945 F.2d 1163,1165 (10th

15  Cir. 1991) ("Individual suits for injunctive and equitable relief from alleged unconstitutional

16  prison conditions cannot be brought where there is an existing class action ."); Gillespie v.

17  Crawford, 858 F.2d 1101, 1103 (5th Cir.1988) (en banc) ("To allow individual suits would

18  interfere with the orderly administration of the class action and risk inconsistent adjudications.").

19   However, in this case, plaintiff is not implicating the procedures and practices put in place by the

20  Plata regime, but rather the allegedly unconstitutional practices of particular prison staff that

21  affect him directly as an individual.  It cannot be that every case involving a prisoner's medical

22  care is subject to review under the umbrella of two or three class action cases.  In this case,

23  involving only an individual's non-policy problems, plaintiff may proceed in this § 1983 action

24  seeking both injunctive relief and money damages.

25  _____

26     [2] Plata v. Brown, 603 F.3d 1088, 1090 (9th Cir. 2010).

1    The court, upon further review, will require plaintiff to re-submit his request for in

2  forma pauperis status using the form appropriate for this district and making sure to have the

3  certificate portion of his request signed by the appropriate individual.  The certificate portion of

4  the request must be completed by plaintiff's institution of incarceration and signed by an

5  authorized prison official.  Also, plaintiff must file a certified copy of his prison trust account

6  statement for the six month period immediately preceding the filing of the complaint.  See 28

7  U.S.C. § 1915(a)(2).  Plaintiff will be provided the opportunity to submit a completed in forma

8  pauperis application and a certified copy in support of his application.

9    Accordingly, IT IS ORDERED that:

10    1.  The Clerk of the Court shall provide plaintiff with another copy of the in forma

11  pauperis application used by this court;

12    2.  Plaintiff shall submit, within thirty days from the date of this order, a fully

13  completed in forma pauperis application.  Plaintiff's failure to comply with this order will result

14  in the defendants not being served and a recommendation that this action be dismissed without

15  prejudice;

16    3.  A copy of this order and these findings and recommendations be served on

17  Deputy Attorney General Misha Igra; and

18    4.  The Clerk is directed to assign a district judge to this case.

19    IT IS HEREBY RECOMMENDED that plaintiff's motion for a temporary

20  restraining order, filed on December 16, 2011 (docket # 2), be denied.

21    These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23  days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within fourteen days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  January 17, 2102

4                                                      /s/ Gregory G. Hollows
                                                UNITED STATES MAGISTRATE JUDGE

5

6   GGH:009/mead3342.ofr

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26