IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GORDON D. MEADOR,

      Plaintiff,                        No. 2:11-cv-3342 LKK AC P

    vs.

M. HAMMER, et al.,

      Defendants.                FINDINGS AND RECOMMENDATIONS

/

        Plaintiff, a state prisoner proceeding with counsel, seeks relief pursuant to 42 U.S.C. § 1983. Defendants' motion to dismiss for failure to exhaust administrative remedies came on for hearing before the undersigned on February 13, 2013. Deputy Attorney General Jessica Kim appeared on behalf of the defendants and Julia Young appeared for plaintiff. At the hearing, the court permitted plaintiff's counsel to supplement the opposition with any relevant additional exhibits, which plaintiff filed on February 15, 2013 and to which defendants responded on February 22, 2013.

        **Allegations of the Complaint**

        Plaintiff alleges that defendants Hammer, Asad and Shaw failed to respond adequately to a medical emergency. Complaint (ECF No. 1). Prior to August 13, 2011, plaintiff

1

had suffered two heart attacks and was on heart medication.  On August 13, 2011, plaintiff was in his cell at CSP-Sacramento when he began suffering severe chest pain, radiating neck pressure, numbness and tingling in his left arm, and shortness of breath.  Fellow inmates loudly banged on the cell doors and windows and called for help.  After an hour of these efforts, Correctional Officers Hammer and Asad arrived and told the inmates to "shut the fuck up," after which they walked away.  Plaintiff, in great fear, banged on his cell window with his walking cane, shattering the cell window.  When defendant Hammer finally returned and noticed the broken window, he reported the damage to Correctional Sgt. Shaw.  Defendant Shaw had plaintiff and his cellmate removed, handcuffed, and placed in cages.  Shortly thereafter, plaintiff was evaluated by medical staff and then transported by ambulance to the hospital.  There it was determined that he had an erratic heartbeat and had suffered damage to his heart.  Plaintiff was later transported to another hospital for heart surgery.  Plaintiff seeks money damages for violation of his Eighth Amendment rights, and injunctive relief prohibiting defendants from refusing to provide emergency medical help to him.  ECF No. 1 at 3-5.

**Motion to Dismiss**

Defendants Hammer, Asad and Shaw seek dismissal pursuant to non-enumerated Fed. R. Civ. P. 12(b), on grounds that petitioner failed to exhaust his administrative remedies.

*The Exhaustion Requirement*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Regardless of the relief sought, whether injunctive relief or money damages, inmates must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999), cert. denied, 528 U.S. 1074 (2000); Booth v. Churner, 532 U.S. 731 (2001).  Administrative remedies must be exhausted before the complaint is filed.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621

F.3d 1002 (9th Cir. 2010) (PLRA exhaustion requirement satisfied with respect to new claims within an amended or supplemental complaint so long as administrative remedies are exhausted prior to the filing of the amended or supplemental complaint).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).

Exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Id. at 84. When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F. 3d 813, 823 (9th Cir. 2010). An inmate "need not press on to exhaust further levels of review" if he has received all "available" remedies at an intermediate level or "has been reliably informed" by an official that no such remedies are available. Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005).

Exhaustion may be excused where administrative remedies are effectively unavailable, see Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010), or where exhaustion would be futile, see Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).

As of January 28, 2011, the CDCR's administrative exhaustion procedure has been modified.[1] See 15 Cal. Code Regs. § 3084.7. In order to exhaust, an inmate must proceed through the following levels of review: (1) first level written appeal on a CDCR 602 inmate appeal form ("appeal" or "602") (which level may be bypassed by the appeals coordinator in certain instances not implicated here), (2) second level appeal for review by "the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole

---

[1] Defendants set forth the former four-level administrative regime that would no longer have been applicable at the time the subject incident occurred. Motion to Dismiss, p. 4.

Administrator, or the equivalent" and (3) third level appeal to the Secretary of the California Department of Corrections and Rehabilitation for review by the Office of the Chief of Inmate Appeals. 15 Cal. Code Regs. §§ 3084.2, 3084.7. The third level of review satisfies the exhaustion requirement. Id. Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.

*Standards Governing the Motion*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, and plaintiff must be provided with notice of his opportunity to develop a record. Id. at 1120 n.14. The court may decide disputed issues of fact. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy. Id. at 1120.

*The Evidentiary Record Regarding Exhaustion*

It is undisputed that plaintiff did not present his grievance regarding the August 13, 2011 incident to the third level of administrative review prior to filing suit on December 16, 2011, as required by the PLRA. The parties dispute whether appeal was effectively unavailable and whether exhaustion should be excused.

On the face of his complaint, plaintiff indicates that he has filed an administrative grievance and that the "appeals coordinator refuses to process the 602." ECF No. 1 at 1. Three exhibits are attached to the complaint: (1) a Form 602 inmate appeal dated August 13, 2011, complaining of staff failure to respond to plaintiff's medical emergency; (2) a Form 22 inmate request for interview, dated August 30, 2011 and addressed to the watch commander, also complaining of staff failure to respond to plaintiff's heart attack on August 13; and (3) a rules violation report dated August 13, 2011, charging plaintiff with destruction of state property for

4

breaking his window, with handwritten notes stating "suffered heart failure 8-13-11" and "dismissed by Lt. Ferris on 9-21-11 B-Yard."[2]

In support of their motion, defendants present the declarations of the medical and non-medical appeals coordinators at California State Prison, Sacramento (CSP-SAC); the Chief of CDCR's Office of Inmate Appeals; and the Chief of the Office of Third Level Appeals for California Correctional Health Care Services (CCHCS). According to these declarations, the only inmate appeal submitted by plaintiff at any level between August 13 and December 16, 2011, was a first level "non-medical" appeal regarding the August 13 incident. (This description matches Exhibit B to the complaint.) According to non-medical appeals coordinator K. Daly, that appeal was received on September 8, 2011 and "screened out" (rejected for consideration) on September 14 because it was allegedly incomplete and lacked supporting documentation. A "screen-out letter" addressed to plaintiff is attached to Daly's declaration. ECF No. 49-5. According to defendants, plaintiff never resubmitted his appeal in response to the screen-out letter.

Plaintiff declares that he never received the screen-out letter, and saw it for the first time when his lawyer showed him defendants' exhibits to the motion to dismiss. ECF No. 54-1. Plaintiff's counsel, both in her declaration and at hearing, described plaintiff's surprise when she showed him a copy of the screen-out letter on October 22, 2012. ECF No. 54-7. Plaintiff's own declaration further avers that upon receiving no response to his appeal, he submitted additional 602s regarding the August 13, 2011 incident.

Plaintiff provides an extensive body of evidence that the prison's internal mail delivery system was plagued with delay and dysfunction during the time he was trying to exhaust his administrative remedies. His declaration states that a prison mailroom employee was

---

[2] The complaint alleges that defendants Asad and Hammer personally interfered with plaintiff's attempt to appeal the incident. The parties have submitted competing declarations on this issue. Because the motion may be resolved without reference to this matter, the undersigned declines to address the factual disputes presented by the conflicting declarations.

1 found to have been tossing outgoing inmate mail into a corner rather than sending it to its
2 intended recipients. ECF No. 54-1 at 2. Defendants acknowledge that there was a problem with
3 the mailroom, but insist that only a minority of the mishandled mail was internal prison mail and
4 that all mail was eventually delivered. ECF No. 57.
5     To illustrate the magnitude of the mailroom problems, plaintiff first points to the
6 docket in this case, which reflects numerous documents signed and submitted by plaintiff on
7 various dates in late 2011 and the first weeks of 2012 but all filed upon belated receipt by the
8 court on April 13, 2012. See ECF Nos. 26 through 35. One of the delayed documents was
9 captioned "Notice of Mail being blocked by CSP-SAC Staff." ECF No. 29. Another was an
10 "Affidavit by Gordon D Meador on Administrative Exhaustion," ECF. No. 33, which also
11 describes the mail room crisis. In response to a subsequent court order seeking clarification,
12 plaintiff provided a declaration explaining the problem of undelivered mail and supported by his
13 detailed handwritten legal mail logs. ECF. No. 38.
14     Plaintiff has also identified several 602s on issues other than the August 13, 2011
15 medical emergency that he submitted for delivery via internal mail during late 2011 and to which
16 he never received a response. ECF No. 54-6. Specifically, plaintiff never received responses to:
17   – a November 27, 2011 grievance regarding lost clothing;
18   – another November 27, 2011 appeal, this one regarding an alleged error by the
19     ICC re: plaintiff's custody status;
20   – a December 4, 2011 emergency appeal, Log No. 114122756, concerning
21     plaintiff's not having received proper medical treatment for his diabetes;
22   – a December 12, 2011 appeal, Log No. 12181122756, regarding release to A-
23     yard and a prison transfer;
24   – a December 22, 2011 grievance, Log No. 122611122756, sent to CDCR records
25     dept. for a CDCR chrono re: ICC action (to appeal the action);
26   – a December 25, 2011 appeal, Log No. 123011122756, to a Sgt. Murphy

regarding issuance of personal property;

– another December 25, 2011 appeal, Log No. 123111127756, regarding not having received his personal property from R&R staff.

Id.; see also ECF No. 62-9 (handwritten mail log).

The handwritten legal mail logs previously presented to the court contain documentation of additional 602s that plaintiff submitted during the time frame most relevant here – August 13, 2011 through December 16, 2011 – and that do not appear on the institution's appeal logs for that period.[3]  See ECF No. 38 at 8-9.  These include:

– a September 2, 2011 appeal, Log. No. 087122756, regarding plaintiff's trust account;

– a September 8. 2011 appeal, Log No. 088122756, regarding broken headphones;

– a September 17, 2011 medical appeal, Log No. 089122756, regarding back pain;

– and an October 24, 2011 appeal, Log No. 103122756, regarding cross-contamination of medication.

Id. Although plaintiff has not produced copies of these various 602s, his logs also contain verifiable information regarding documents submitted to this court, and about correspondence to prison officials that has been reproduced in response to the instant motion.[4]

Plaintiff's logs document his submission of the original 602 regarding the August

---

[3] According to defendants's declarants, as previously noted, the only 602 that was received from plaintiff during the relevant period was the grievance regarding the August 13, 2011 incident that was screened out as incomplete.

[4] For example, plaintiff's letters complaining about the mail room, ECF No. 62-3 and 62-4, are accurately logged.  See ECF. No. 38 at 10.

7

13, 2011 incident on August 19, 2011,[4] and follow-up 602s on the issue (variously identified as "no response emergency" and "no response man down," often with specific reference to defendants Hammer and Asad) submitted on August 30, September 28, October 26, and November 15, 2011. ECF No. 38 at 8-9. As with the other log entries, plaintiff includes the addressee, log number, and staff member to whom each outgoing item was delivered.

Plaintiff provides two screen-out letters dated February 21, 2012, both of which state that the appeals at issue had been cancelled as duplicative of plaintiff's appeal dated August 19, 2011, "which was cancelled due to time constraints." ECF Nos. 62-5, 62-6. Plaintiff points out that because his August 19 appeal was dated less than a week after the August 13 incident, it cannot have been properly cancelled "due to time constraints."

A declaration of counsel attests to the persistent problems she experienced with mail to and from plaintiff throughout the relevant period, and problems she has experienced more generally with CSP-SAC inmate mail processing. ECF No. 54-7.

Finally, plaintiff has provided documentation of an administratively exhausted appeal that encompassed both the events of August 13, 2011 and plaintiff's grievance regarding staff response to a subsequent cardiac event in March of 2012. That appeal was exhausted on conclusion of third level review after this action had been filed. See ECF No. 54-5 (Director's Level Decision dated August 22, 2012).

In response to plaintiff's showing of problems with CSP-SAC's mail delivery system, defendants provide the declaration of CSP-SAC litigation coordinator L. Young. ECF No. 57 at 6-7. He declares that "several" boxes of undelivered mail were discovered in the CSP-SAC mail room in March of 2012. Only a "small portion" of the undelivered mail was addressed to internal prison recipients. The undelivered mail was logged and delivered with an

---

[4] The 602 is dated August 13, 2011, but plaintiff and defendants all refer to it as submitted on August 19, 2011. Defendants indicate that it was received for screening on September 8, 2011. See ECF No. 49-5.

explanatory cover letter. According to the log, the boxes of undelivered mail contained twelve items submitted for mailing by plaintiff. All were addressed to organizations and individuals outside the prison. Id.

*Analysis*

No administrative appeal involving plaintiff's August 13, 2011 medical emergency was reviewed at the third level prior to December 16, 2011, when the complaint was filed in this court. Even assuming that the Director's Level Decision dated August 22, 2012 exhausted remedies as to the August 2011 incident as well as the March 2012 incident which is its primary focus, that decision was rendered after the complaint in this case was filed. Defendants correctly argue that a case without pre-suit exhaustion must be dismissed without prejudice even if there is exhaustion while the suit is pending. See Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005). Accordingly, plaintiff may only survive the motion to dismiss if exhaustion is excused as effectively unavailable prior to December 16, 2011. See Nunez, 591 F.3d at 1224-26. The burden of proof regarding the availability of unexhausted remedies remains with defendants. See Brown, 422 F.3d at 936-37.

Plaintiff argues that he diligently attempted to exhaust but was effectively prevented from doing so by the institution's mishandling of his paperwork. Plaintiff contends that because he never received the letter screening out his original 602, he could not comply with the instructions conveyed in that letter or otherwise perfect his appeal and pursue it through the Director's Level. Although inmate reports of "disappearing" 602s and appeal responses are relatively commonplace, they are rarely supported by a substantial evidentiary record such as plaintiff has provided here. Plaintiff has produced an extensive body of evidence that CSP-SAC's system for processing inmate mail, including internal prison mail such as appeals and related paperwork, was effectively broken at the time he was attempting to exhaust his remedies. Normally a presumption of regularity applies to a state agency's actions, United States Postal Serv. v. Gregory, 534 U.S. 1, 10 (2001), but that presumption is overcome here as to the

9

regularity of prison mail and the concomitant internal delivery of inmate paperwork.

Plaintiff's sworn statement that he did not receive the screen-out letter is credible in light of the other evidence of missing and delayed mail during the relevant period. Although defendants contend that the prison's "mailroom issues" primarily affected mail destined for the U.S. Postal Service, and that only "a small portion" of the affected mail was for internal delivery, ECF No. 57 at 2, 7, plaintiff has demonstrated the delayed receipt of internal correspondence. His own logs of his outgoing legal mail, which the undersigned finds credible in light of their many verifiably accurate entries, note submission of 602s of which defendants have no record.

Accordingly, the undersigned accepts plaintiff's sworn statement that he did not receive the screen-out letter. The complaint's allegation that "the appeals coordinator refuse[d] to process the 602," ECF No. 1 at 1, is most plausibly read not as an allegation of deliberate interference with exhaustion by the appeals coordinator, but as a representation that to the best of plaintiff's knowledge the 602 *had not been processed* at the time the complaint was filed. The failure of prison authorities to process the appeal within time limits would have excused exhaustion, and thus justified plaintiff in filing suit without having received a Director's Level response. See Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) ("[a] prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Just as an inmate's failure to follow procedures defeats exhaustion, Woodford, 548 U.S. 81, the institution's failure to follow procedures defeats the defense of non-exhaustion, Sapp, 623 F.3d at 823.

Plaintiff's diligence in seeking to exhaust is relevant to the decision to excuse exhaustion under Nunez, 591 F.3d at 1224 (exhaustion excused where plaintiff took "reasonable and appropriate steps to exhaust" but was thwarted by warden's error). Defendants represent that the only 602 submitted by plaintiff on any issue between August 13, 2011 and December 16, 2011, was the one that was screened out. Plaintiff has produced evidence that he submitted additional 602s regarding the August 13 medical emergency, as well as 602s addressing other

1  issues, within the relevant time-frame. Plaintiff's declaration in this regard is supported by his
2  own outgoing legal mail logs, which the undersigned finds credible because they are
3  corroborated in part as noted above. Defendants' declarations, on the other hand, are not
4  supported by the logs that they summarize. Those logs would not be dispositive in any case,
5  because the absence of entries demonstrates at most that documents were not received and does
6  not prove they were not sent. The institution's acknowledged and systemic problem with
7  unprocessed mail undercuts the evidentiary value of the institution's appeal logs during the time
8  period in question.

9       It bears noting in this context that although defendants acknowledge that a
10 substantial backlog of unprocessed mail was discovered "on or around March 2012," ECF No.
11 57 at 6, they do not provide any evidence regarding how long that undelivered mail had been
12 accumulating. The declarations of plaintiff and his counsel provide ample reason to suspect that
13 the failure to process inmate legal mail had been a problem of long standing at CSP-SAC, and
14 that it was not limited to the contents of the boxes discovered in March of 2012. The discovery
15 of boxes full of unprocessed inmate mail supports an inference that the mailroom was not
16 properly supervised, to say the least, and casts serious doubt on the integrity of the institution's
17 entire process for handling mail including internal delivery of paperwork from inmates.

18      Plaintiff's sworn statement that before filing suit he had submitted additional 602s
19 regarding the August 2011 medical emergency is consistent with his previously-filed log of
20 outgoing legal mail from the fall of 2011. See ECF. No. 38 at 8-9. Plaintiff has also submitted
21 two Form 22 requests for interviews that were submitted on August 30 and August 31, 2011
22 regarding this incident. CECF Nos. 62-1, 62-2. Although Form 22 requests do not
23 administratively exhaust a claim, see 15 Cal. Code Regs. § 3086(i), these documents are relevant
24 to plaintiff's diligence in seeking redress through administrative channels. In light of the
25 evidentiary record as a whole, the undersigned accepts plaintiff's representation that he
26 repeatedly attempted to submit 602s and that these were not processed due to institutional

11

failure.

Defendants point to the August 22, 2012 Director's Level Response to a subsequent appeal, ECF No. 54-5, as evidence that plaintiff could have successfully exhausted prior to filing this lawsuit even if he had not received the screen-out letter. This argument fails because the incident precipitating that appeal was a medical emergency that occurred on March 3, 2012. Id. The August 2012 document demonstrates that administrative remedies were available between March 3 and August 22, 2012 – after the discovery of the unprocessed mail in the prison mailroom and efforts to address and remedy the problem.[5] The question here is whether remedies were effectively available to plaintiff prior to December 16, 2011 – before the discovery and (it is to be hoped) cure of the mail backlog and related institutional failures.

For all the reasons set forth above, the undersigned finds that exhaustion should be excused as effectively unavailable prior to the filing of the complaint. As in Nunez, plaintiff took "reasonable and appropriate steps to exhaust" his claim, and was precluded from exhausting by institutional circumstances beyond his control. See Nunez, 591 F.3d at 1224. The subsequent rejection of plaintiff's appeals of this incident on grounds they were duplicative of the first appeal, ECF Nos. 62-5, 62-6, demonstrate that further attempts to exhaust would be futile. See Ward, 678 F.3d at 1045 (exhaustion excused where futile). Defendants have not met their burden of proving that plaintiff's access to administrative review was unimpeded during the relevant period.

The court therefore finds that defendants' motion should be denied.

Accordingly, IT IS RECOMMENDED that:

1. Defendants' motion to dismiss for plaintiff's failure to exhaust administrative

---

[5] Although it is not directly relevant to the exhaustion analysis here, the undersigned notes that the discovery of a large volume of unprocessed inmate legal mail presented a potentially serious violation of inmates' right of access to the courts under the First and Fourteenth Amendments. Prison officials cannot have failed to realize that the situation required swift action.

12

remedies under non-enumerated Fed. R. Civ. 12(b), ECF No. 49, be denied; and

    2. Defendants be directed to file an answer within thirty days of the filing date of the Order adopting these Findings and Recommendations, should that occur.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 26, 2013.

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
mead3342.mtd

13